UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZANIA M. HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  1:19-cv-01729-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF No. 19) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 10, 11, 25).

At a hearing on February 18, 2021, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

///

///

1    I.    **ANALYSIS**

2              1)  Dr. Ravi Goklaney

3        Plaintiff claims that the ALJ made legal error by affording "little weight" to Plaintiff's

4    treating physician, Dr. Ravi Goklaney. (ECF No. 19 at 16). The Ninth Circuit has held regarding

5    such opinion testimony:

6           The medical opinion of a claimant's treating physician is given "controlling
            weight" so long as it "is well-supported by medically acceptable clinical and
7           laboratory diagnostic techniques and is not inconsistent with the other substantial
            evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a
8           treating physician's opinion is not controlling, it is weighted according to factors
            such as the length of the treatment relationship and the frequency of examination,
9           the nature and extent of the treatment relationship, supportability, consistency
            with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To
10          reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must
            state clear and convincing reasons that are supported by substantial
11          evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)
            (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.
12          2005)). "If a treating or examining doctor's opinion is contradicted by another
            doctor's opinion, an ALJ may only reject it by providing specific and legitimate
13          reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d
            at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The]
14          reasons for rejecting a treating doctor's credible opinion on disability are
            comparable to those required for rejecting a treating doctor's medical opinion.").
15          "The ALJ can meet this burden by setting out a detailed and thorough summary of
            the facts and conflicting clinical evidence, stating his interpretation thereof, and
16          making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)
17          (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

18

19

20   *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

21        Dr. Goklaney's opinion is contradicted by the opinions of two state agency psychologists.

22   Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by

23   substantial evidence for giving little weight to Dr. Goklaney's opinion.

24        The ALJ included the following discussion regarding Dr. Goklaney's opinion:

25          In October 2016, Ravi Goklaney posited that the claimant would be off task 60%
            of a typical workday due to the effects of depression and panic disorder. (Exhibit
26          2F/1). He posited that the claimant had marked to extreme limitations in several
            areas pertaining to understanding, concentration, social interactions and
27          adaptation. (Exhibit 2F/2-3). This opinion carries little weigh[t] because it is not

28

2

1

2
      supported by or consistent with the record as [a] whole. His treatment notes do
not document such severe symptoms and limitations, and the claimant's treatment
was mostly conservative and infrequent. For instance, there was only minimal
psychiatric care between July 2013 and 2016.

3

4
(A.R. 22).

5
      Plaintiff takes issue with the ALJ's first rationale, that the opinion was not supported by or

6
consistent with the record as a whole, because it is insufficiently specific and supported. (ECF

7
No. 19 at 16, 17). However, the ALJ provided two additional reasons, which the Court will

8
examine for sufficient specificity and legitimacy.

9
      Turning to these reasons, the ALJ indicates that Dr. Goklaney's treatment notes are not

10
consistent with his limiting opinion. In reviewing Dr. Goklaney's treatment notes, for instance,

11
the ALJ found that Plaintiff's "[m]ental status examination was again mostly unremarkable," and

12
that Plaintiff had intact memory and average intelligence. (A.R. 16). This was an accurate

13
summary of Dr. Goklaney's findings. (A.R 294) ("There is improvement of initial symptoms";

14
"Memory is intact"; "Patient's intellect is average"; "Behavior is…unremarkable"). Thus, as the

15
ALJ noted, these findings are inconsistent with Dr. Goklaney's limiting opinion.

16
      The ALJ's other rationale is that Plaintiff's treatment was mostly conservative and

17
infrequent. As the ALJ noted elsewhere in the order, Plaintiff only sought mental health treatment

18
on a sporadic and infrequent basis and generally experienced improvements with medication.

19
(A.R. 18) (Plaintiff had "two visits in 2013, one in 2015, a few in 2016, and four in 2017."). Dr.

20
Goklaney's infrequent treatment of Plaintiff and his notes therefrom tend to support this finding.

21
(A.R. 298) (Plaintiff is to "[c]ontinue meds as [she is] doing ok on meds."). The ALJ properly

22
relied on this rationale to discount Dr. Goklaney's opinion. *See Mannina v. Berryhill*, No. 2:17-

23
cv-01850-AC, 2019 WL 446405, at *6 (E.D. Cal. Feb. 5, 2019) (The ALJ "gave specific and

24
legitimate reasons for discounting opinions of treating physicians whose opinions were

25
inconsistent with plaintiff's conservative treatment and positive response to that treatment."

26
(citing *Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (unpublished))).

27
///

28
///

3

1    Therefore, the ALJ provided specific and legitimate reasons supported by substantial

2    evidence for giving Dr. Goklaney's testimony little weight.

3                                    2)   Dr. Christina delToro-Diaz

4    Next, Plaintiff argues that the ALJ made legal error by discounting the opinion of

5    Plaintiff's other treating physician, Dr. Christina delToro-Diaz. As Dr. delToro-Diaz is a treating

6    physician, and her opinion is contradicted by state agency psychologists, this Court examines

7    whether the ALJ provided specific and legitimate reasons supported by substantial evidence for

8    giving partial weight to Dr. delToro-Diaz's opinion. *See Trevizo*, 871 F.3d at 675.

9    The ALJ included the following discussion regarding Dr. delToro-Diaz's opinion:

10

11       The treating source opinion of Christina delToro-Diaz, MD carries partial weight.
         Dr. delToro-Diaz opined that the claimant could *at least* frequently lift more than
12       20 pounds, sit, stand[,] walk, stoop, climb, and perform manipulative activities.
         (Exhibit 4F). Notably, the form given to Dr. delToro-Diaz listed frequently (and
13       not constantly) as the least restrictive option in determining the claimant's lifting,
         postural, and manipulative limitations and Dr. delToro-Diaz selected the least
14       restrictive option available in these categories. This portion of the opinion carries
         some weight because this opinion is consistent with her treatment of the claimant
15       demonstrating conservative care and generally well controlled symptoms. Less
         weight is allocated to Dr. delToro-Diaz' conclusion that the claimant would have
16       occasional difficulty concentrating and be absent one day per month due to her
         impairments. This is not consistent with Dr. delToro-Diaz' treatment note dated
17       December 8, 2016, the same day this opinion was signed, indicating that the
         claimant has no significant restrictions and was looking for a job. Her headaches
18       were stable. (Exhibit 7F/1).
19
20    (AR 20-21).

21    It is worth noting at the outset that Dr. delToro-Diaz's medical statement gave the opinion

22    that Plaintiff would be the least restricted in every way, other than the note about absences from

23    work. For example, Dr. delToro-Diaz selected the least restrictive option available as to

24    Plaintiff's ability to sit, stand, walk, stoop, climb, lift or carry weight, and manipulate her arms

25    and hands. (A.R. 334). Dr. delToro-Diaz also noted that Plaintiff would not require unscheduled

26    breaks in an 8-hour workday. (A.R. 335). Thus, Dr. delToro-Diaz's opinion largely supported the

27    RFC and the lack of more severe limitations for Plaintiff.

28    ///

4

1    Nevertheless, Plaintiff takes issue with the ALJ's characterization of Dr. delToro-Diaz's

2    treatment note dated December 8, 2016. (ECF No.19 at 20). Turning to the treatment note, it

3    states, "[a]t this time, [Plaintiff] reports that she is looking for a job and feels that she can work at

4    least part-time with no significant restrictions." (A.R. 353). Plaintiff argues that "looking for a

5    *part-time* job is not inconsistent with Dr. delToro-Diaz's opinion." (ECF No. 19 at 20) (emphasis

6    in original). However, the ALJ has reasonably interpreted this note to conflict with Dr. delToro-

7    Diaz's limiting opinion because being absent one day per month due to Plaintiff's impairments

8    appears to be a significant restriction, which the treatment note would have accounted for if the

9    limitation were present. Instead, Dr. delToro-Diaz found that Plaintiff had "no significant

10   restrictions," (A.R. 353), and only "occasional difficulty concentrating" that would not lead to

11   unscheduled breaks in a regular workday. (A.R 334, 335). Moreover, whether part-time work

12   may or may not be consistent with one day of absence, the fact remains that Dr. delToro-Diaz's

13   treatment note does not provide support for her opinion regarding Plaintiff's projected absences.

14   Plaintiff does not point to another part of the note that would support this limitation. Given the

15   relatively positive nature of the report that Plaintiff "is looking for a job" and could have at least a

16   part-time job "with no significant restrictions," (A.R. 353), the ALJ was entitled to give less

17   weight to Dr. delToro-Diaz's opinion about Plaintiff's absences without some other support in her

18   treatment notes.

19   Therefore, the ALJ provided specific and legitimate reasons supported by substantial

20   evidence for giving Dr. delToro-Diaz's opinion partial weight.

21               3)  Dr. Michael Musacco

22   Plaintiff argues that the ALJ erred by improperly giving discounted weight to examining

23   physician, Dr. Michael Musacco. (ECF No. 19 at 21). Based on the legal precedent cited above,

24   and because Dr. Musacco's opinion was also contradicted by the state agency mental health

25   consultants, this Court looks to whether Dr. Musacco's opinion was rejected for specific

26   and legitimate reasons that are supported by substantial evidence in the record.

27   ///

28   ///

5

The ALJ's stated reasons for giving Dr. Musacco's opinion partial weight were as follows:

> As for the psychological opinion evidence, the undersigned gives some weight to the opinion of examining psychologist Michael Musacco, PhD. (Exhibit 9F/1). At a consultative examination in February of 2017, the claimant told Dr. Musacco that she had anxiety and depression. (Exhibit 9F/1). On mental status examination, the claimant was oriented to date, month, and year. The claimant's appearance revealed intact hygiene and grooming. Her affect was guarded and anxious. Her speech was goal directed. She reportedly experienced feelings of low energy, sadness, and hopelessness. She had thoughts of death. The claimant reported a history of suicidal ideation. She complained of symptoms of anxiety in the form of panic attacks, occurring every other day. She also complained of memory problems. (Exhibit 9F/2). The claimant's fund of general information was roughly intact, as were her attention/concentration skills and immediate memory skills. She was able to accurately recite five digits forward and recall two out of three unrelated words after a brief interval. (Exhibit 9F/2).
>
> Based on his observations, Dr. Musacco posited that the claimant suffered from major depressive disorder and panic disorder. (Exhibit 9F/3). He posited that the claimant appeared to be capable of managing her disability benefits if her application was approved. He determined that her daily activities were underproductive based on her subjective reports. The claimant told Dr. Musacco that she did not socialize with others often. He opined that her attention/concentration skills were roughly intact. Dr. Musacco concluded that her symptoms of depression and anxiety might lead to episodes of emotional deterioration occurring in a work-like setting. (Exhibit 9F/3). This opinion carries some weight because Dr. Musacco examined the claimant in person and he has experience in evaluating claimants pursuant to SSA's disability standards in the area of his specialty. He found no significant limitations, which is consistent with the treatment records as previously described. However, Dr. Musacco's statement that her symptoms may lead to episodes of emotional deterioration is given little weight as vague and not supported by the claimant course of sporadic mental health treatment discussed above. His statements concerning her daily activities and socialization appear to be largely based on the claimant's subjective complaints, but in any case, any deficiencies in social interaction or activities of daily living are accounted for by limiting the claimant to simple tasks and occasional interaction with others. Therefore, this opinion carries partial weight.

(A.R. 21)

It is again worth noting that Dr. Musacco's opinion largely supported the RFC. Although Plaintiff takes issue with one aspect of the ALJ's opinion, cited below, the rest of Dr. Musacco's opinion supported the RFC, including the findings that Plaintiff exhibited goal directed speech, was oriented as to date, appeared cooperative with the evaluation procedures, and maintained

1    intact hygiene and grooming (A.R. 379).

2           Nevertheless, Plaintiff argues that the ALJ erred in finding that Dr. Musacco's opinion

3    was not supported by the treatment record. (ECF No. 19 at 21). However, Dr. Musacco's

4    treatment notes do not appear as limiting as his opinion. (A.R. 379) ("[Plaintiff's] fund of general

5    information was roughly intact, as were her attention/concentration skills and immediate memory

6    skills."). This finding is further supported by Plaintiff's sporadic mental health treatment, as

7    reasoned by the ALJ and discussed above. Finally, Plaintiff argues that Dr. Musacco's rationale

8    was not vague. However, Dr. Musacco qualified his own opinion. (A.R. 380) ("Her symptoms …

9    *may* lead to episodes of deterioration…") (emphasis added). With no further context, the

10   likelihood and degree of Plaintiff's potential mental deterioration are unclear. Moreover, Dr.

11   Musacco does not explain what episodes of deterioration would be, including the intensity or

12   length of those episodes. He does not opine as to what if any work Plaintiff would need to miss,

13   or if those episodes could be ameliorated by limitations to social contact as reflected in the RFC.

14   Thus, the ALJ was permitted to conclude that Dr. Musacco's opinion was vague.

15          Therefore, the ALJ provided specific and legitimate reasons supported by substantial

16   evidence for giving Dr. Musacco's opinion partial weight.

17                          4)   <u>State Agency Psychologists</u>

18          Plaintiff argues that the ALJ failed to provide specific and legitimate reasons that are

19   supported by substantial evidence in the record for relying on the opinions of non-examining state

20   agency consultants that conflict with Plaintiff's treating sources and consultative examinations.

21   (ECF No. 19 at 22). It is the ALJ's responsibility to determine credibility and resolve conflicting

22   medical opinions. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

23   As discussed above, the ALJ has permissively resolved the conflicting medical opinions by

24   setting forth specific and legitimate reasons supported by substantial evidence in the record for

25   discounting each challenged opinion.

26   ///

27   ///

28   ///

1

## II.    CONCLUSION AND ORDER

2          Thus, the decision of the Commissioner of Social Security is hereby affirmed.

3          The Clerk of the Court is directed to close this case.

4

5   IT IS SO ORDERED.

6      Dated:   **March 23, 2021**                     /s/ *Erica P. Grosjean*

7                                                        UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28